IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| United States of America ex rel. Sally Schimelpfenig, et al.<br><br>Plaintiffs<br><br>vs.<br><br>Dr. Reddy's Laboratories Ltd, et al<br><br>Defendants | Docket No. 2:11-CV-4607-CDJ<br><br>Honorable C. Darnell Jones, II |

RELATORS MOTION AND MEMORANDUM OF LAW SEEKING AWARD OF
IT'S REASONABLE FEES AND COSTS AGAINST DR. REDDY DEFENDANTS
PURSUANT TO 31 U.S.C. § 3730(d) OF THE FALSE CLAIMS ACT

I. Summary of Motion

Sally Schimelpfenig and John Segura (Relators) bring this Motion under the supplemental jurisdiction[1] provisions of 28 U.S.C. §1367(a) seeking an award of it's reasonable attorneys' fees and costs against the Dr Reddy's Defendants pursuant to 31 U.S.C. § 3730(d)(1) and (2) of the False Claims Act (FCA).[2] As the Court is aware, the United States can "elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty." 31 U.S.C. § 3730(c)(5).

While the United States declined to intervene in the underlying FCA Action, as the Court is aware, it filed it's own civil action, based substantially on the

---

[1] Plaintiff filed it's Notice of Appeal of the underlying FCA action on June 29, 2018 raising issues involving the Orders by the District Court of March 9, 2018 as well as the Order of May 30, 2018 denying Relators Motion for Reconsideration.

[2] The FCA is a compulsory fee-shifting statute. When a non-intervened FCA action is settled, the Relator "shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d)(2).4 "All such expenses, fees, and costs shall be awarded against the defendant." Id.

-1-

factual allegations in the Relators Third Amended Complaint (TAC) against Defendant Dr. Reddy's Laboratories, Inc. (DRL) under docket No 17-13219 in the United States District Court for the District of New Jersey ("CPSC Action") on December 18, 2017. Pursuant to the CPSC Action Defendant Dr. Reddy's Laboratories, Inc. agreed to pay a civil monetary penalty in the amount of $5,000,000.00 dollars that was memorialized in a Consent Decree. See Exhibits A (Government Complaint in CPSC Action) and Exhibit B (Consent Decree) attached hereto respectively.

In light of the Government's declination and the Alternate Remedy provisions of 31 U.S.C. § 3730(c)(5), Relators notified the United States in December 2017 that they were entitled to the same rights in the CPSC Action as they would have in the FCA Action, including a share of the $5,000,000 dollars that the Government had received. The United States contested that the Relators were entitled to a Relator's Share pursuant to 31 U.S.C. § 3730(d).

In settlement of the dispute with the United States, the Plaintiffs agreed to withdraw and dismiss its Appeal. The United States, while continuing to maintain that it contests Relators right to a share, agreed to a payment of $500,000.00 dollars or ten (10%) of the civil monetary penalty to Relators. The settlement "specifically excluded and reserved from those claims released by Plaintiff any claim between the Defendants and Plaintiffs regarding attorney fees." See Exhibit C - Settlement Agreement.

Section 3730(c)(5) of the FCA provides that "the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section." The rights Relators are entitled to include an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs, to be awarded against the defendants. The Relators have incurred legal fees and costs in the

amount of $616,399.78 dollars and have presented such claim to Defendant Dr. Reddy's Laboratories., who has refused to consider paying any portion of such fees and costs.  Plaintiff's bring this Motion to enforce it's statutory rights against Defendants for it's reasonable fees and costs incurred.

## II. Procedural Background

By Order of March 9, 2018 (Dkt. No. 102) the Court granted the Defendants Motions to Dismiss Plaintiff's Third Amended Complaint ("TAC") as it relates to the claims under 31 U.S.C. § 3729[3]. Plaintiff filed a Motion for Reconsideration which was denied by Order of May 30, 2018 [Dkt. No. 109].

Plaintiff filed it's Notice of Appeal on June 29, 2018 raising issues involving the Orders by the District Court of March 9, 2018 [Dkt. No. 102] based on the reasons set forth in the District Court's Memorandum of March 27, 2018 [Dkt. No. 84] as well as the Order of May 30, 2018 denying the Motion for Reconsideration.

On or about August 20, 2018, the Government and Relators entered into the Settlement Agreement and Relators withdrew it's appeal.

## III.  The Court Has Supplemental Jurisdiction

When a district court has federal question jurisdiction  over any claims in an action before it, the court also has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

Title 28 U.S.C. § 1367(a) empowers district courts that have original jurisdiction over an action—through federal question or diversity of citizenship—to

---

[3]  The Original Complaint was filed under seal on July 21, 2011 pursuant to § 31 U.S.C. 3729. The First Amended Complaint was filed on or about June 16, 2015 while still under Seal.  On September 18, 2015 the United States declined to intervene and on November 10, 2015, the Court unsealed the Complaint. The Second Amended Complaint (SAC) was filed on or about September 10, 2015.  Thereafter, Defendants filed Motions to Dismiss (MTD). The District Court granted the MTD on March 27, 2017, dismissing the SAC without prejudice, but granting Plaintiff thirty (30) days to re-file their claims in a Third Amended Complaint (TAC, Doc # 84). Plaintiff filed their TAC on April 20, 2017.  DRL and the Pharmacy Defendants refiled Motions To Dismiss.

exercise supplemental jurisdiction over related local claims from the same "case or controversy." Exxon Mobile v. Allapattah Servs., 545 U.S. 546, 559 (2005). The grant of jurisdiction in Section 1367(a) is subject to Sections 1367(b) and 1367( c) Id. Section 1367( c) specifies four scenarios in which a district court may decline to exercise supplemental jurisdiction over a claim under Section 1367(a):

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367©.

Despite the fact that it's Order of May 30, 2018 dismissed the case with prejudice and Plaintiff's subsequent filing of it's Notice of Appeal being filed on June 29, 2018, this Court should exercise jurisdiction and reopen the case because the Third Circuit has recognized that "the federal forum has a vital interest in [attorneys' fee arrangements] because they bear directly upon the ability of the court to dispose of cases before it in a fair and reasonable manner." See Novinger v. E.I. DuPont de Nemours & Co., Inc., 809 F.2d 212 (3d Cir.1987); see also Kant v. Seton Hall University, 422 Fed.Appx. 186, 188 n. 3 (3d Cir.2011). Specifically, in the qui tam action United States of America and The State of New Jersey, ex rel. Nicholas M. DePace, v. The Cooper Health System, 940 F.Supp. 2d 208 (2013) the District Court cited the proposition that:

> ". . .although attorneys' fee arrangements are contracts under state law, the federal court's interest in fully and fairly resolving the controversies before it requires courts to exercise supplemental jurisdiction over fee disputes that are related to the main action." In Novinger, the Third Circuit recognized that "the federal forum has a vital interest in [attorneys' fee arrangements] because they bear directly upon the ability of the court to dispose of cases before it in a fair and reasonable manner." 809 F.2d at 217.

> Therefore, the Third Circuit held that the district court properly concluded that "although there was no diversity of citizenship between the Novingers and their former counsel there was ancillary jurisdiction over the dispute over fees and expenses." Id. [emphasis added].

IV. The Alternate Remedy Provisions of the False Claims Act

There are two distinct and separate issues related to the Alternate Remedy provisions of the False Claims Act as it concerns this Motion. First, was the CPSC Action an Alternate Remedy pursued by the Government. Second, are Relators entitled to a share of the $5,000,000 dollars in proceeds received by the United States as part of the Consent Decree which settled the CPSC Action.

A. Was the CPSC Action an Alternate Remedy Available to The Government

In this case, the Third Circuit holding in United States of America Ex Rel. Hefner, v. Hackensack University Medical Center et al, 495 F.3d 103, (3rd Cir. 2007) is both instructive in part, and distinguishable in part.

As stated in Hefner:,

> [U]nder the FCA, the United States may "elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty." 31 U.S.C. § 3730(c)(5). If the government does pursue an alternate remedy, however, "the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section."

Courts have directly held that proceedings qualify as an alternate remedy under section 3730(c)(5) when a settlement agreement between qui tam defendants occurs in a non-intervened case. In United States ex rel. Bledsoe v Community Health Systems, Inc[4] (which the Third Circuit cited to with approval in Hefner[5]), the Sixth Circuit held that when the Government does not intervene in a qui tam

---

[4] 342 F. 3d 634 (6th Cir. 2003)

[5] See Hefner at 113 (. . . In analyzing the issue before us, we are aided by the opinions of two of our sister courts. In United States ex rel. Bledsoe v. Community Health Systems, Inc., 342 F.3d 634, 650 (6th Cir.2003)

case, but pursues settlement negotiations separately with the defendant, the settlement negotiations qualify as an alternate remedy under section 3730(c)(5). Specifically, the Sixth Circuit, in Bledsoe held that "alternate remedy" refers to the government's pursuit of any alternative to intervening in a relator's qui tam action. Id. Bledose at 647.  The Court's analysis follows:

> We begin our analysis with the plain language of the FCA. United States v. Ninety–Three (93) Firearms, 330 F.3d 414, 420 (6th Cir.2003) (citations omitted).  In so doing, we observe that § 3730(c)(5) does not expressly require the government's intervention before the "alternate remedy" becomes applicable, nor does it define or discuss "alternate remedy" within the context of a government's intervention in a qui tam action. Rather, § 3730(c)(5) states that "the Government may elect to pursue its claim through any alternate remedy available to the Government." 31 U.S.C. § 3730(c)(5). The FCA contemplates enforcement by the qui tam relator, or intervention and judicial pursuit of the FCA claims by the government.  The most logical reading of "alternate remedy" is as the government's alternative to judicial pursuit of the relator's claims, i.e., an alternative to intervening in a qui tam action. . . . Thus, we are persuaded that the plain language of § 3730(c)(5) makes clear that a relator's participation rights are preserved when the government pursues the relator's claims through any means alternative to intervening in the qui tam action. [emphasis added]

In the claim brought by Relators, this is essentially what the United States elected to do when it filed the CPSC Action based on violations of the Consumer Product Safety Act ("CPSA"), 15 U.S.C. § 2068(a)(1),(4) and (6) as well as the violations of the Poison Prevention Packaging Act 15 U.S.C. ¶ 1471-77 ("PPPA"). The three counts in the CPSC Action center on DRL's knowing violation of (1) distributing, selling and importing, et al, product that was not in compliance with the PPPA, (2) failing to report the non-child resistant packaging of the products in question, and (3) failing to provide a General Conformity Certificate.

The subject products in the CPSC Action are the five blister packages identified in Plaintiff's TAC. The only difference is that the TAC includes thirty

eight bottle packaged products in addition to the blister packs. The time period of the two actions also overlap.  In fact, these claims mirror, and are entirely based on the factual allegations and evidence provided by Relators in the TAC which are the same foundations of the "falsity" and "scienter" claims in the TAC. So closely are they intertwined, that counsel for Dr. Reddy's is the same outside counsel for both the underlying FCA Action and negotiation of the Consent Decree.

The payment of $5,000,000 dollars under the Consent Decree of Civil Penalty and Permanent Injunction (Consent Decree) is a civil penalty pursuant to 15 U.S.C. § 2069. The factual predicate of the CSPC Action was based on the fraud alleged in the Relator's TAC.  The Complaint in the CPSC Action and the Consent Decree were both filed the same day (December 18, 2017) were certainly the result of settlement negotiations leading up to the filing of the Complaint and Consent Decree.

Clearly, the CPSC Action was an Alternate Remedy available to the Government which it pursued and resulted in proceeds from a civil monetary penalty.

### B.  Relators Are Entitled To Share In the Proceeds

The case before the Court is distinguishable from Hefner, and much of the existing case law that surrounds the Alternate Remedy provisions of 3730(c)(5) for the two following reasons. First, the Motion is not seeking a claim of the proceeds which the Government is contesting. That issue has already been resolved through the Settlement Agreement between Relators and the United States. The Hefner Court, on the other hand, was addressing "whether a relator, whose qui tam claims are proven invalid, is entitled to any share of the proceeds of an alternate remedy attributable to those claims." Id. Hefner at 113.  In Hefner, the Government refused to make any payment to the Relator. Here, Relators and the Government have negotiated a settlement to the claims of Relators and Relators have received

payment from the Government. Second, even though the TAC had been dismissed with prejudice, Relators were still actively pursuing the action in its appeal to the Third Circuit.  As such there was no final determination of the "viability" of the TAC by the appellate court. Notwithstanding the United States position that it contests that the Relators are entitled to a Relator's Share pursuant to 31 U.S.C. § 3730(d), the resolution of that dispute, and the payment of proceeds to Relators through the Settlement Agreement in exchange for withdrawing their appeal is tangible evidence of the viability of Relators claim..  This gives Relators the "same rights" in CPSC Action as they "would have" under the FCA Action, which includes reasonable attorney fees and costs to be awarded directly from the defendants.

V.  Defendants are Liable for Relator's Reasonable Attorneys' Fees and Expenses

The FCA is a compulsory fee-shifting statute[6]. When a non-intervened FCA action is settled, the Relator "shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C.§ 3730(d)(2). "All such expenses, fees, and costs shall be awarded against the defendant." Id.

In fact, the False Claims Act mandates that the defendant pay relators reasonable expenses, including attorney's fees and costs when there is a recovery for the United States by settlement.

> ... such persons shall also receive an amount for reasonable expenses which the Court finds to have been necessarily incurred, plus reasonable attorney's fees and costs.  All such expenses, fees, and costs shall be awarded against the defendants.  31 USC. § 3730(d)(2) (emphasis supplied); see also Simring v. Rutgers, 14-1126, 215 U.S. App. LEXIS 13550, at *5-6, 2015 WL 4620613, at *2(3d Cir. August 4, 2015).  ("A relator must receive 'reasonable' attorney's fees when a SCA suit results in settlement in which the defendant agrees to pay money.") (Citing 31 U.S.C. § 3730(d)).

Congress recognized that relators needed to secure competent counsel in

---

[6] 31 U.S.C. § 3730(d)(1) and (2)

bringing FCA actions on behalf of the United States, and "the '[unavailability of attorneys fees inhibits and precludes many individuals, as well as their attorneys, from bringing civil fraud suits.'"[7] The defendant's payment of reasonable attorneys' fees and costs is therefore critical to the success of the False Claims Act, and fulfills Congressional intent in amending the FCA's qui tam provisions in 1986. Congress amended the False Claims Act in 1986 to revitalize the languishing anti-fraud measure by encouraging key time relators to come forward with private counsel willing to prosecute fraud against the government.[8]

In light of the Government declination and the provisions of 31 U.S.C. § 3730(c)(5) which gives the Relators the same rights in CPSC Action as they would have in the FCA Action, and the Governments agreement to pay Relators a share of the $5,000,000 dollars that the Government has received, Defendants are required to pay all of Relator's reasonable expenses, attorneys' fees, and costs. Defendants is also liable for the reasonable fees and expenses incurred in preparing and litigating this fee petition.

## VI.  Relator's Counsels' Hourly Rates Are Reasonable

A reasonable hourly rate is a prevailing or fair market rate for those services in the relevant community.[9] The Third circuit generally allows a "forum rate" rule holding that the proper forum for calculating attorney's fees is one in which the

---

[7] United States ex rel DePace v Cooper Health Systems, 940 F. Supp 2d. 208, 215 (D.N.J. 2013 (quoting S. Rep 99-345, at 29 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5294)

[8]   The senate report to the 1986 amendments state that "The committee's overall intent in amending this Key Time section of the False Claims Act is to encourage more private enforcement suits." S. Rep. No. 345, 99 Congress., Second Session 23-24 (1986), reprinted in 1986 U.S.C.C.A.M. 5266, 5288-89.

[9]    Blum v. Stenson, 465 U.S. 886, 895 (1984); Simring v. Rutgers, 215 U.S. App. LEXIS 13550, at *6, 215 WL 4620613, at *2 (3d Cir. August 4, 2015). ("A reasonable hourly rate is the prevailing rate in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.")

litigation is lodged. [10]

> Community Legal Services in Philadelphia ("CLS") publishes a fee schedule that is used "in cases in which the law allows for the award of attorney's fees."[11] As the first circuit recognized in Maldonado v. Houstoun, 256 F. 3d 181, 184 (3d Cir. 2001), the rates published by CLS "have been widely accepted as fairly reflecting the prevailing market rates in Philadelphia."

### VII. Conclusion

Relator's Motion herein seeks an Order entitling Relators to it's reasonable attorneys' fees and costs, subject to review of a Fee Petition to be filed with this Court, awarded against the Dr Reddys Defendants.

Respectfully submitted

BEGELMAN &, ORLOW

By: /s/ Ross Begelman

Marc M. Orlow, Esquire
Ross Begelman, Esquire

September 5, 2018

---

[10] Simring v. Rutgers, Id.

[11] CLS Fee Schedule, effective September 12, 2014 available at http://clsphila.org/about-cls/attorney/fees.